IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CARPENTERS PENSION AND ANNUITY FUND OF PHILADELPHIA AND VICINITY, et al | : | CIVIL ACTION |
| | : | |
| Plaintiffs | : | |
| | : | |
| v. | : | |
| | : | |
| DERRICK R. BANKS and ANNA E. BANKS | : | |
| | : | |
| Defendants | : | NO. 02-4545 |

**MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT**

Plaintiffs, Carpenters Pension and Annuity Fund of Philadelphia and Vicinity, ("Pension Fund") and Edward Coryell ("Coryell" and, together with Pension Fund, "Plaintiffs") by their legal counsel, file this Memorandum in Support of their Motion for Judgment by Default.

## BACKGROUND

Defendant Derrick R. Banks ("Derrick") is a participant in the Pension Fund. The Pension fund is a defined benefit pension plan which includes a "cash balance" benefit -- commonly called an "Annuity Account." The interest credited to the cash balance account is set by separate plan provision based on overall Fund return and is not tied to the interest rate on the loan.[1] The plan of benefits for the Pension Fund allows a participant to borrow up to 50% of the Annuity Account for certain specified reasons. Exhibit 1, Carpenters Pension and Annuity Fund of Philadelphia and Vicinity Plan, "Plan", at § 3.24(d)). Under the Plan, the loan is secured by but does not reduce the remaining Annuity Account balance. The loan is thus an undifferentiated Plan investment. Even with a default in payment, the Plan is indeed prevented from exercising on its security until Derrick has a "distributable event" that would allow him to withdraw his Annuity Account on his own

volition. In the meantime, the loan is a non-performing asset that affects the overall investment return of the Pension Fund.

Derrick had an Annuity Account of $44,108.28 and requested a loan for education expenses pursuant to Section 3.24(a)(i) of the Plan, which was approved. In connection with the loan distribution, Derrick and Anna E. Banks ("Anna" or, together with Derrick, "Defendants"), executed a Promissory Note ("Note") on April 4, 2001 for the repayment of a loan from the Pension Fund in the amount of $22,054.00. The term of the Note was five (5) years, with an interest rate of 9%, to be repaid in 60 equal monthly installments of $457.80. The first installment was due July 1, 2001.

Pursuant to the terms of the Note, each payment is due on the first day of each month. If payment is not received by the 15th of any month, a late charge of 3% of the scheduled payment will be applied. Furthermore, the terms of the Note indicate that if a regularly scheduled payment is not received by the Pension Fund by the end of the calendar quarter in which the payment was due, a default shall have occurred. Finally, the Note indicates that, if a legal action to enforce the Note is filed, the Defendants will also be liable for the outstanding principal balance of the Note, accrued interest and late fees, and all costs of collection, including attorney and filing fees.

Defendants made payments on the Note for the period July 1, 2001 though November 1, 2001. No payment has been made by Defendants since that date, and default occurred March 31, 2002. Defendants, therefore, owe a principal balance of $20,569.03; interest through August 31, 2002 in the amount of $1,432.09; late fees through August 31, 2002 in the amount of $123.57; and attorneys' fees and costs in the amount of $1,147.50 through September 17, 2002.

Prior to commencement of this lawsuit, the Fund attempted to resolve the matter amicably. Defendants, however, have failed to make any further payments on the Note, nor have they attempted to cure the delinquency pursuant to the terms of the Note. As a result, this lawsuit was instituted

against Defendants on July 10, 2002. Service of the Complaint and Summons was made on Defendants on July 25, 2002. Defendants did not file an Answer or other responsive pleading within 20 days of service, and on September 17, 2002, the Fund filed a Request to the Clerk to Enter Default pursuant to Fed. R. Civ. Pro. 55(a) concurrently with a Motion for Default Judgment pursuant to Fed. R. Civ. Pro. 55(b).

On February 11, 2003, this Court requested that the Fund submit this Memorandum of Law setting forth the theory of recovery in this matter.

## ARGUMENT

### I. DEFENDANTS HAVE RECEIVED PLAN ASSETS THROUGH A LOAN THAT HE IS OBLIGATED TO REPAY TO THE PLAN

The Fund is a trust fund established under 29 U.S.C. §186(c)(5) and a "multiemployer plan" and "employee benefit plan" within the meaning of 29 U.S.C. §1002(37), (2) and (3). As such, the fiduciaries of the Fund are prohibited from engaging in transactions that have the practical effect of constituting the "lending of money or other extension of credit between the plan and a party in interest." 29 U.S.C. § 1106(a)(1)(B). Derrick is a participant in the plan, and Anna is a plan beneficiary and, therefore, they are "parties in interest" as defined in section 3(14) of ERISA, 29 U.S.C. 1002(14).

However, an exemption from the prohibited transaction enumerated in ERISA section 406, 29 U.S.C. § 1106, allows:

> [a]ny loans made by the plan to parties in interest who are participants or beneficiaries of the plan if such loans (A) are available to all such participants and beneficiaries on a reasonably equivalent basis, (B) are not made available to highly compensated employees (within the meaning of section 414(q) of Title 26) in an amount greater than the amount made available to other employees, (C) are made in accordance with specific provisions regarding such loans set forth in the plan, (D) bear a reasonable rate of interest, and (E) are adequately secured.

29 U.S.C. § 1108(b).

These loans are jointly regulated by the United States Department of Labor and the United States Treasury Department. In order for a "multiemployer plan" and an "employee benefit plan" to be able to provide for these loans, several regulations must be satisfied.

- •.   The amount of the loan may not exceed the greater of 50% of the vested accrued benefit of a participant or $10,000, with an absolute cap of $50,000. 26 U.S.C. §72(p)92)(A).

- •.   A loan for any other purpose than for the purchase of a principal residence must be repaid over a period of not more than five (5) years, 26 U.S.C. § 72(p)(2)(B), and the loan must be paid back in level installments. <u>Ibid</u>.[2]

- •.   Finally, the Department of Labor expressly provides for the use of the participant's vested accrued benefit as security for such loans. 29 C.F.R. §2550.408(b)-1(f)(2).

The combined IRS and Labor Department regulations color and encumber the prohibited transaction exemption with compliance with the restrictions of the Internal Revenue Code.

The Fund's plan documents provide for such loans and comport with all of the statutes and regulations necessary and cited above. (<u>See</u> Exhibit 1, Plan at § 3.24). The Plan states, in part:

> (a) ... [W]ith the consent of the Board, a loan shall be made to an Active Participant who is a party in interest (as defined in section 3(14) of ERISA), who has two or more years of Credited Service, and who makes proper application for a loan from his Annuity Benefit Accumulation Account for the purpose of :
>
> (i)   paying all or part of the expenses of educating the Active Participant or a dependant of such Active Participant;
>
> (ii)   acquiring ownership of a principal residence or preserving ownership of a principal residence of the Active Participant; or
>
> (iii) paying medical expenses that the Active Participant is obligated to pay.
>
> (e)   ... All loans shall be secured by the pledge of one-half of the Active Participant's Annuity Benefit Accumulation Account, and by the pledge of such further collateral as the Board, in its discretion, deems necessary to assure

repayment of the borrowed amount and all interest to be accrued thereon in accordance with the terms of the loan, including an assignment of the Active Participant's interest in his cafeteria benefit account under the Carpenters Health and Welfare Fund of Philadelphia and Vicinity (the "Welfare Fund").

(h)   ...Loans shall be repaid in level monthly installments by personal check or in such other manner as may be directed by the Board. In the event of a late payment, the Board shall impose a late payment charge and shall cause to be drawn from the Active Participant's cafeteria benefit account under the Welfare Fund an amount equal to the late payment plus the late payment charge, but not more than the balance of such account. Loans may be repaid in full, without penalty, at any time. Partial prepayment may be made at any time during the term of the loan provided that the amount of any prepayment is at least equal to one year's worth of scheduled repayments and further provided that no more than two partial prepayments are permitted during the term of any given loan.

(1)   <u>Default and Remedies</u>

(i) ...   In the event that

(a)   an Active Participant fails to make any installment payment in full by the end of the grace period (as defined below); or

(b)   the loan is not repaid by the time the promissory note matures,

(c)   and the funds in the Active Participant's cafeteria benefit account under the Welfare Fund are insufficient to satisfy the late payment or the unpaid balance of the loan, the unpaid balance of the loan, with interest due thereon, shall become immediately due and payable.

(ii)   ... In the event that a loan becomes immediately due and payable (in "default") pursuant to the preceding subparagraph, the Active Participant (or his beneficiary in the event of the Active participant's death) may satisfy the loan by paying the outstanding balance in full by the close of the grace period. The "grace period" with respect to any payment shall end on the last day of the calendar quarter following the calendar quarter in which the applicable payment was due. Otherwise, the Active Participant's Annuity Benefit Accumulation Account shall be reduced by the amount allocated to the loan before any benefit which is or becomes payable to the Active Participant or his beneficiary is distributed. The reduction described in the preceding sentence shall occur as soon as administratively practicable following a determination that a loan is in default, in accordance with the following rules:

(a)   ... If the Active Participant (i) retires with a Normal Retirement Pension, an Early Retirement Pension, or a Disability Retirement Pension (ii) dies, or (iii) has no Contribution Hours reported for him for a period of 24 consecutive

months, the Active Participant's Annuity Benefit Accumulation Account shall be reduced by the amount of the unpaid balance of the loan, with interest due thereon, and the Active Participant's indebtedness shall thereupon be discharged.

(b)   If the Active Participant is not described in subparagraph (i)(ii)(A), the Active Participant's Annuity Benefit Accumulation Account shall be reduced in the manner described in subparagraph (i)(ii)(A), as of the date the Active Participant is entitled to a distribution under Article III.

Any distribution pursuant to this subparagraph (i)(ii) shall be deemed to have been distributed to the Active Participant under the terms of the Plan. *No action under this subparagraph (i)(ii) shall operate as a waiver of the rights of the Board or the Plan under applicable law. The Board also shall be entitled to take any and all other actions necessary and appropriate to enforce collection of the outstanding balance of the loan.*

(1)   Any loan made to an Active Participant under this Section 3.24 shall be evidenced by a promissory note executed by the Active Participant and if applicable, consented to by his Spouse in accordance with Section 3.24(b). The Board shall have the right to require the Active Participant to execute a revised promissory note if the Board determined it is necessary to comply with ERISA or the Code. In the event the Active Participant does not execute such revised promissory note by the date prescribed by the Board, the loan shall become due and payable as of such date. An amortization schedule shall be established and interest shall be charged for the consolidated loan at the interest rate determined by the Committee.

(See Exhibit 1, Plan)(emphasis added).

Pursuant to the Plan, Defendant Derrick applied for a loan of $22,054 for education expenses, one of the enumerated purposes for such loans. (See Exhibit 1, Plan, at (a)(i); Exhibit 2, Application for Annuity Account Loan, "Application"). The requested amount was 50% of the total vested accrued benefit available in Defendant Derrick's annuity account. (See Exhibit 3, Spousal Consent Form, "Consent Form", at 1).

Concurrent with the submission of the application, Defendants jointly executed a Promissory Note for the requested amount. (See Exhibit 4, Promissory Note, "Note"). The terms of the Note state, in pertinent part:

This Loan is made under the rules and regulations of the Carpenters Pension and Annuity Plan of Philadelphia & Vicinity.  The loan is subject to interest at a fixed rate for the life of the loan as set forth above.  The loan, and any interest, must be entirely repaid within five (5) years from the date of the making of the loan except for a loan for Home Purchase, which may be paid over fifteen (15) years.  I agree to repay the loan in equal monthly installments.

       I understand and agree to the following.

- Any payment pursuant to my application is a loan which must be repaid and not a distribution of money from my Additional Benefit Accumulation ("Annuity Account") benefit under the Pension Plan.

- My monthly payment is due on the 1st of each month.  If any payment is not received by the 15th of each month, a late charge of 3% of the scheduled payment will be applied.

- All amounts due under the loan may be immediately due and payable if I fail to make any payments on time or in the event of my insolvency, bankruptcy, death, or incompetence ("Default").  I will have a one-time opportunity to cure my late payment.  A default will occur if a regularly monthly scheduled payment is **NOT** received by the Pension Plan Office by the end of the calendar quarter following the calendar quarter in which the payment was due.

- If I do not make my loan payments on time, a suit may be filed and I will be held responsible for the outstanding principal balance of the loan, accrued interest and all costs of collection, including attorney and filing fees.  I understand that by making this application I am waiving any right to presentment, demand, notice of dishonor and protest before a lawsuit.

- A Default in the repayment of the loan will result in the payment of my "cafeteria plan benefit" under the Carpenters Health & Welfare Fund of Philadelphia & Vicinity ("Cafeteria Plan") to the Pension Plan for application to my loan.  Any such payment of the Cafeteria Benefit will be taxable income to me.  If I default, I agree to designate all cafeteria plan money thereafter as vacation benefits, assign such benefits to the Pension Plan and irrevocably designate the Pension Plan or its designated agent as my attorney-in-fact to make such designations and benefit elections, receive benefits and endorse any check for such benefits for and on my behalf.

   Pursuant to the Note, a distribution of funds was made and Defendants were to begin

repayment on July 1, 2001.  (<u>See</u> Exhibit 4, Note).  Payments of $457.80 were made each month

for the period July 1, 2001 through November 1, 2001.  (See Exhibit 5, Payment Receipt Information).  No further payments have been made to the Fund.

Several letters were sent by the Fund in an effort to avoid the default of the Note, but no response from the Defendants was forthcoming. Pursuant to the terms of the Note, the Plan and Treas. Reg. 1.72(p), the Note was defaulted as of April 1, 2002.  (See, Exhibit 5, Hackett Letter; Exhibit 1, Plan; Exhibit 3, Note).  In accordance with Section 3.24(i)(ii) of the plan, and as Derrick acknowledged in the promissory note, Plaintiffs now seek "...to take .. other actions necessary and appropriate to enforce collection of the outstanding balance of the loan" after default to restore Plan assets and allow them to be invested for the benefit of all Plan participants and beneficiaries.

## II.   PLAINTIFFS MUST TAKE PRUDENT ACTION TO COLLECT THE LOAN AND AVOID A PROHIBITED TRANSACTION.

The unique feature of this investment is that the "loan" is specifically prohibited by ERISA, as it is made to a "party-in-interest" under 29 U.S.C. §1002(14) rather than a stranger to the plan, absent compliance with plan terms and related implied tax terms under 29 U.S.C. §1108(c).  The prohibited transaction restriction makes the loan more than simply contractual and transforms the borrower into a dual role as a debtor and a constructive trustee improperly holding plan assets once the terms of the exemption are violated.

As a fiduciary of the Plan, Coryell has a specific duty to "secure ... repayment [of loans] because 'ERISA clearly assumes that trustees will act to ensure that a plan receives *all* funds to which it is entitled, so that those funds can be used on behalf of participants and beneficiaries.'" Best v. Cyrus, 310 F.2d 932, 936 (6th Cir. 2002)(quoting Central States Southeast & Southwest Areas Pension Fund v. Central Transportation, Inc., 472 U.S. 559, 571, 86 L.Ed.2d 447, 105

S.Ct. 2833 (1985)).

29 U.S.C. §§1106 and 1104(a)(1)(D) impose a specific duty on plan fiduciaries to avoid prohibited transactions and makes them personally liable for acts of omission, as well as commission, in that regard.  C.f., 29 U.S.C. §1113 (limitations period can run from last day on which breach could be cured). The Plaintiffs thus bring this action to seek a declaration of Default under the terms of the Plan and to prevent a continuing prohibited transaction by a judgment in favor of the Plaintiffs to restore the Plan assets and the lost earnings or profits thereon to the Plan on a timely basis – as contemplated for any breach of duty by one holding plan assets. See Great West Life & Annuity Ins. Co. v. Knudson, 534 U.S. 204, 215, 122 S.Ct. 708, 151 L.Ed.2d 635 (2002)(citing Harris Trust and Sav. Bank v. Salomon Smith Barney, Inc. 530 U.S. 238, 147 L. Ed. 2d 187, 120 S. Ct. 2180 (2000) for this proposition that "an action for restitution against a transferee of tainted plan assets" is "appropriate equitable relief" within the meaning of §502(a)(3)"); Harris Trust, supra, 530 U.S. at 249 (holding that § 502(a)(3) itself imposes a duty on parties-in-interest who participate in a prohibited transaction and that the imposition of a constructive trust over the *res* and its proceeds is an appropriate equitable relief under ERISA); 29 U.S.C. §1109 (liability for profits and other equitable or remedial relief of trustee).

The Court may nonetheless be concerned that the Supreme Court's recent decision in Knudson precludes enforcement of the loan in this court.  In Knudson, the Supreme Court held that an insurance company could not remove a dispute over a contractual subrogation and indemnity clause to federal court under 29 U.S.C. §1132.[3]  The plan provision, if any, at issue in Knudson was not separately regulated by ERISA and the Court found that the relief sought was purely legal in nature.

The propriety of the request for legal relief in federal court is not precluded by Knudson for at least two reasons.

First, Knudson dealt solely with the scope of relief that is available under 29 U.S.C. §1132. There is, however, nothing in the decision that precludes alternative bases of federal jurisdiction for benefit plan issues, and the issuance of an Order for legal relief thereunder.

Second, the Third Circuit in Northeast Department ILGWU Health and Welfare Fund v. Teamsters Local Union No. 229 Welfare Fund, 764 F.2d 147, 159 (3rd Cir. 1985), held that the "federal common law of ERISA related employee benefit plans [is] part of the laws of the United States for the purposes of federal question jurisdiction under 28 U.S.C. §1331. " Northeast ILGWU specifically concluded that "a case not falling within the express jurisdictional grant of §1132 of ERISA may nevertheless arise under federal law for purposes of §1331 jurisdiction." Id. at 156. As this case "arises under" federal law for purposes of 28 U.S.C. §1331, jurisdiction is proper before this Court even if §1132 were unavailable.

As the Note is inextricably linked to, and defined by, the terms of the Plan and the prohibited transaction rules of ERISA, the present action clearly "arises under" the laws of the United States, particularly that body of Federal common law developed under ERISA in the furtherance of "secur[ing] uniform federal laws regulating employee benefit plans." Albert Einstein Med. Ctr. v. Action Manufacturing Co., 697 F. Supp. 883, 885 (E.D.Pa. 1988)(holding common law claims by health provider and against benefit plan pre-empted by ERISA where the case "turn[s] on an interpretation of the rights of a beneficiary under the plan[,]"). See also M & R Investment Co., Inc. v. Fitz-Simmons, 484 F. Supp. 1041 (D. Nev. 1980) and other cases which have dealt with plan investments in federal court where the terms and enforceability of the investment were limited and specifically regulated by the prohibited transaction rules of ERISA.

## **CONCLUSION**

The Plaintiffs bring this action pursuant to 29 U.S.C.§ 1132(a)(3), seeking a declaration of Default under the terms of the Plan and the imposition of a constructive trust over the distributed funds and its proceeds, and 28 U.S.C. § 1331, seeking judgment for default in favor of the Plaintiffs and against the Defendants, jointly and severally, in the amount of $23,272.19.

                Respectfully submitted,

                JENNINGS SIGMOND, P.C.

        By:      s/RICHARD J. DeFORTUNA

                SANFORD G. ROSENTHAL (ID NO. 38991)
                RICHARD J. DeFORTUNA (ID NO. 86260)
                The Penn Mutual Towers, 16th Floor
                510 Walnut Street
                Philadelphia, PA  19106
                (215) 351-0611
                (215) 351-0674

                Attorneys for Plaintiffs

Date: March 3, 2003

---

[1] The loan program here is thus different from some defined contribution plans which maintain an individual account, 29 U.S.C. § 1002(34).  In such plans, the loan can be allocated to the individual account of the borrower, pursuant to 29 U.S.C. §1104(c) or other plan provisions.  This option is not available to a defined benefit plan where benefits must be definitely determinable and provide a reasonable rate of interest until retirement for all participants, See, Proposed Treasury Regulation 1.411(b)-2(b)(2), Advance Announcement

2003-01, 2003-2 IRB (interest is part of accrual in cash balance plan). See also, PBGC Prop. Rules, 29 C.F.R. pts. 4022 and 4044, Title IV: Aspects of Cash Balance Plans with Variable Indices, 65 Fed. Reg. 41610, 41611 (July 6, 2000)(general explanation of cash balance plans and issues).

[2]  There are two exceptions to this rule, only one of which is relevant to the present case.  There is a grace period whereby a loan will not be placed in default (triggering a taxable distribution event for the participant) until the end of the calendar quarter following the calendar quarter in which a payment is missed.  Treas. Reg. § 1.72(p)

[3]  While the Supreme Court referred to the insurer as a "plan" or "plan fiduciary," that assumption is far from clear.  See, 29 U.S.C. §1144 2(B)(state insurance laws saved from preemption); Dukes v. U.S. Healthcare, 57 F.3d 350 (3d Cir. 1995)(distinguishing a plan from its insurer in malpractice matters)