IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CARPENTERS PENSION AND ANNUITY FUND OF PHILADELPHIA AND VICINITY, et al | : | CIVIL ACTION |
| Plaintiffs | : | |
| v. | : | |
| DERRICK R. BANKS and ANNA E. BANKS | : | |
| Defendants | : | NO. 02-4545 |

**MEMORANDUM ON COURT QUESTIONS RELATING TO JURISDICTION**

Plaintiffs, Carpenters Pension and Annuity Fund of Philadelphia and Vicinity, ("Pension Fund") and Edward Coryell ("Coryell" and, together with Pension Fund, "Plaintiffs") by their legal counsel, file this memorandum to address the Court's questions concerning its subject matter jurisdiction over this action.

The Court noted three principal questions.

- Whether *Great West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 122 S.Ct. 708 (2002) forecloses jurisdiction under 29 U.S.C. §1132.

- Whether the case fits within the confines of federal question jurisdiction under 28 U.S.C. §1331, as enunciated by either Judge Becker or Judge Sloviter in *Northeast Department ILGWU Health and Welfare Fund v. Teamsters Local Union No. 229 Welfare Fund*, 764 F.2d 147 (3rd Cir. 1985).

- Whether, on a related note, 29 U.S.C. §1144 would provide "complete pre-emption" of the application of state law to the loan transaction at issue, so as to provide "federal question" jurisdiction under the rationale of *Pilot Life Insurance Company v. W. Dedeaux*, 481 U.S. 41, 107 S.Ct. 1549 (1987).

115820-1

## BACKGROUND

Plaintiffs incorporate the factual background provided in their Memorandum in Support of Motion for Entry of Default Judgment.

## ARGUMENT

**I.    KNUDSON AND ERISA JURISDICTION**

*Knudson* held that an insurance company could not remove a dispute over a contractual subrogation and indemnity clause to federal court under 29 U.S.C. §1132 after finding that the relief sought was purely legal in nature. This holding has two important limitations in the context of this case.

- First, *Knudson*, 534 U.S. at 215, citing *Harris Trust and Sav. Bank v. Salomon Smith Barney, Inc.* 530 U.S. 238, 249, 120 S. Ct. 2180 (2000) reaffirmed the proposition that "an action for restitution against a transferee of tainted plan assets" is "appropriate equitable relief" within the meaning of 29 U.S.C. §1132(a)(3)

- Second, *Knudson* dealt solely with the scope of relief that is available under 29 U.S.C. §1132. There is nothing in the decision that precludes alternative bases of federal jurisdiction for benefit plan issues, and the issuance of an order for "legal" relief thereunder

*Lumenite Control Technology, Inc. v. Jarvis*, -- F.Supp.2d --, 2003 WL 1585091 (N.D. Ill. 2003), explored the availability of restitution as an avenue to federal jurisdiction after *Knudson* in the analogous context of an action to recover a benefit overpayment.

> *Lumenite* seeks restitution of the alleged overpayment it made to Ms. Jarvis. It proceeds under section 1132(a)(3)(B) of ERISA, which states that a civil action may be brought by a plan fiduciary "to obtain other appropriate equitable relief" to redress violations of the ERISA statute, to enforce ERISA provisions, or to enforce terms of the plan. 29 U.S.C. § 1132(a)(3)(B). Ms. Jarvis argues that the restitution remedy sought does not qualify as "other appropriate equitable relief" under section 1132(a)(3)(B), and that *Lumenite* is thus precluded from proceeding under that section.

A. "Other Appropriate Equitable Relief"

The Supreme Court recently reexamined the meaning of the phrase "other appropriate equitable relief" in *Great-West Life & Annuity Ins. Co. v. Knudson,* 534 U.S. 204, 122 S.Ct. 708, 151 L.Ed.2d 635 (2002). In that case, the Court reiterated a previous ruling that the term "equitable relief" in § 18132(a)(3) must mean something less than all relief, and in fact, it refers to "those categories of relief that were typically available in equity." *Id.* at 209-10, 122 S.Ct. 708 (quoting *Mertens v. Hewitt Assocs.,* 508 U.S. 248, 256, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993) (emphasis removed)). The Court went on to say that "not all relief falling under the rubric of restitution is available in equity." *Great-West Life,* 534 U.S. at 212, 122 S.Ct. 708. Whether restitution is a legal or equitable remedy (and consequently whether it falls under § 1132(a)(3)) is determined on a case-by-case basis depending on the basis of the plaintiff's claim and the nature of the underlying remedy sought. *Id.* at 213, 122 S.Ct. 708. When a plaintiff cannot assert title or right to possession of particular property but can nevertheless show grounds for recovering money to pay for some benefit that the defendant has received from him, restitution is a legal remedy. *Id.* On the other hand, when money or property belonging to the plaintiff can clearly be traced to particular funds or property in the defendant's possession, restitution is an equitable remedy, generally taking the form of a constructive trust or an equitable lien. *Id.* "Thus, for restitution to lie in equity, the action generally must seek not to impose personal liability on the defendant, but to restore to the plaintiff particular funds or property in the defendant's possession." *Id.* at 214, 122 S.Ct. 708.

Here, *Lumenite* does not seek to impose personal liability on Ms. Jarvis, it simply seeks to recover the particular funds that it allegedly overpaid to Ms. Jarvis. Ms. Jarvis argues, however, that she no longer has the alleged overpayment, and that *Lumenite* cannot trace the alleged overpayment to any particular funds or property currently in her possession. It is undisputed that the alleged overpayment was disbursed into an IRA created by Ms. Jarvis. *Lumenite* contends that the money in the IRA was used to make a down payment on a house, and that the overpayment is thus traceable to the house.

Both the May 1999 and the January 2000 disbursements were paid into the IRA. However, because only a portion of the January 2000 payment is in dispute, the IRA contained both the alleged overpayment as well as money that undisputedly belonged to Ms. Jarvis. Where a single account contains money to which the account holder is entitled as well as money that rightfully belongs to another person, the rightful owner is entitled to a lien on the commingled fund in the amount of his own monies traceable to it. 2 Dan B. Dobbs, Law of Remedies § 6.1(4) (2d ed.1993). When that fund is used in its entirety to purchase property, the other person is entitled to a constructive trust for a share of the property proportionate to his share of the fund. *Id.*

Here, while the record is unclear, it certainly supports a finding that the entire IRA fund was used as a down payment for Ms. Jarvis' house. When asked in her deposition "What happened to the money in your IRA?" Ms. Jarvis answered "I used it to buy my home." (Jarvis Dep. at 86.) Ms. Jarvis states that she paid $10,012 in federal taxes and penalties when she cashed out her IRA. (Def.'s Statement of Facts ¶ 210.) The citations she makes to the record, however, do not indicate whether this amount was paid out of the IRA or out of other sources. Even if this amount had been paid out of the IRA (and thus the entire fund was not used for the down payment), the alleged overpayment could still be traced in its entirety to the house under various theories of tracing. *See* 2 Dobbs § 6.1(4) at 18-22 (describing tracing theories such as "first in, first out" and the Hallett Rule, which could potentially be used to show that any taxes and penalties paid out of the IRA were paid out of Ms. Jarvis' portion of the funds).

Further, even if Ms. Jarvis used other funds in addition to the IRA to make the down payment on her house, the ability to trace the alleged overpayment to the house would not be affected. The proportionate share rule for commingled funds could be applied again, treating the down payment as a single "account." If the alleged overpayment constituted 50% of the IRA funds, and the IRA funds constituted 50% of the down payment, *Lumenite,* if entitled to restitution of the alleged overpayment, would have a constructive trust for a 25% share of the down payment. If the down payment was 20% of the home purchase price, *Lumenite* would have a constructive trust in 5% of the home. Because the alleged overpayment is potentially traceable to Ms. Jarvis' home, and if so, *Lumenite* could seek a constructive trust in a share of it, this action can be considered one for equitable relief. *Lumenite* may thus proceed under §1132(a)(3)(B).

The tracing of funds into commingled property is also recognized in the Third Circuit, *Goldberg v. N.J. Lawyer's Fund for Client Protection*, 932 F.2d 273, 276, 280 (3d Cir. 1991) ("it is a well settled principle of law that where a fiduciary commingles trust funds with his own, equity imposes a trust fund upon the entire fund"); *Voest-Alpine Trading U.S. v. Vantage Steel Corporation*, 919 F.2d 206, 216-218 (3d Cir. 1990)(similar with conversion of nature of property). The possibility of ERISA jurisdiction for recovery of plan assets from a participant thus survives *Knudson*.

The procedural quirk in a default judgment is the absence of discovery that would allow the tracing of funds to specific retained property and clearly satisfy *Knudson's* restricted concept of "equitable" restitution. The Court, however and conversely, should adhere to the well-pleaded

115820-1                                                4

complaint rule and assume the truth of the allegations and reasonable inferences therefrom on a motion for entry of a default judgment, *Trans World Airlines, Inc. v. Hughes,* 449 F.2d 51, 63 (2d Circuit 1971) *rev'd on other grounds,* 409 U.S. 363, 93 S.Ct. 647, 34 L.Ed. 2d 577 (1973). In this case, the Complaint does not clearly allege that the necessary constructive trust should be placed over the res which is traceable to the funds.

## II.   ILGWU AND FEDERAL QUESTION JURISDICTION.

The Third Circuit decision in *Northeast Department ILGWU Health and Welfare Fund v. Teamsters Local Union No. 229 Welfare Fund*, 764 F.2d 147 (3rd Cir. 1985) addresses the other aspect of jurisdiction left open by *Knudson*. It held that the "federal common law of ERISA related employee benefit plans [is] part of the laws of the United States for the purposes of federal question jurisdiction under 28 U.S.C. §1331." *Northeast Department ILGWU,* 764 F.2d at 159. *Northeast Department ILGWU* specifically concluded that "a case not falling within the express jurisdictional grant of §1132 of ERISA may nevertheless arise under federal law for purposes of §1331 jurisdiction," *Northeast Department ILGWU,* 764 F.2d at 156, and upheld jurisdiction in a contractual dispute between two employee benefit plans. The court's question was whether the decision has sufficient breadth to provide jurisdiction under 28 U.S.C. §1331 in this case.

As the Court noted, *Northeast Department ILGWU* provides two separate tests of §1331 jurisdiction in an ERISA context. Judge Becker phrased the test as follows:

> In *Illinois v. City of Milwaukee, Wisconsin,* 406 U.S. 91, 92 S.Ct. 1385, 31 L.Ed.2d 712 (1972), the Supreme Court definitively stated:
>
> We see no reason not to give "laws" its natural meaning ..., and therefore conclude that §1331 jurisdiction will support claims founded upon federal common law as well as those of a statutory origin.
>
> *Id.* at 100, 92 S.Ct. at 1391.

In *Illinois v. Milwaukee,* the Court was faced with a claim by the State of Illinois that the City of Milwaukee, among others, was causing a public nuisance by dumping some 200 million gallons of raw sewage daily into Lake Michigan.  The state requested that the Court, vested with original jurisdiction over suits in which a state is a party, abate the nuisance.  The Court declined to exercise its original jurisdiction, but held that jurisdiction existed in the appropriate federal district court pursuant to 28 U.S.C. § 1331.  The Court noted that Congress had legislated extensively in the area of interstate water pollution, most specifically through the Federal Water Pollution Control Act, 33 U.S.C. § 1151, and that under this Act only the United States was authorized to bring suits for abatement of water pollution.  Nevertheless, the Court held that there exists a federal common law of nuisance, separate from and coexisting with the congressional scheme, which not only governs such disputes but also provides the "laws" under which such actions may arise within the meaning of § 1331.

The Court's holding in *Illinois v. Milwaukee* appears to be applicable to the case at bar.  If the ILGWU Fund's claim for declaratory relief "arises under" federal common law, the absence of an express statutory grant of jurisdiction in § 1132 of ERISA is, under the rationale of *Illinois v. Milwaukee,* irrelevant, and this claim may be adjudicated in federal court pursuant to 28 U.S.C. § 1331(a).  *See Jersey Central Power & Light Co. v. Local Unions of the International Brotherhood of Electrical Workers,* 508 F.2d 687, 699 (3d Cir.1975) ("inasmuch as the EEOC agreement must be interpreted according to federal substantive [common] law, ... the Company's cause of action joining EEOC 'arises under' laws of the United States"), *vacated and remanded on other grounds,* 425 U.S. 987, 96 S.Ct. 2196, 48 L.Ed.2d 812 *cert. denied,* 425 U.S. 998, 96 S.Ct. 2215, 48 L.Ed.2d 823 (1976).

*    *    *

An action arises under federal law "if and only if the complaint seeks a remedy expressly granted by a federal law or if it requires the construction of a federal statute or a distinctive policy of a federal statute requires the application of federal legal principles for its disposition." *Lindy v. Lynn,* 501 F.2d 1367, 1369 (3d Cir.1979); *see also Franchise Tax Board,* 103 S.Ct. at 2846 ("Leading commentators have suggested that for purposes of § 1331 an action 'arises under' federal law 'if in order for the plaintiff to secure the relief sought he will be obliged to establish both the correctness and the applicability to his case of a proposition of federal law.'  P. Bator, P. Mishkin, D. Shapiro & H. Wechsler, *Hart & Wechsler's The Federal Courts and the Federal System* 889 (2d ed. 1973)....").  An action thus "arises under" federal common law if, *inter alia,* plaintiff's requested relief requires the interpretation and application of federal judge-made law.  In order to decide whether this case is cognizable under general federal question jurisdiction, therefore, one must determine whether there exists a federal common law of employee benefit plans that governs this dispute between

the ILGWU and Teamsters Funds.

*Northeast Department ILGWU,* 764 F.2d at 156.

Judge Becker's test is satisfied by the web of federal law and regulations that defines and regulates the terms of a permissible "loan" to a participant. The plan provision, if any, at issue in *Knudson* is distinguishable as it was not separately regulated by ERISA and did not involve any direct recovery of plan assets or investments.

The federal rules require that a permitted loan must be an enforceable obligation under applicable law and have express rules regarding refinancing and repayment after default, IRS Reg. [26 C.F.R.] 1.72(p)-1 Q&A 3(a) (loan must be made under an enforceable agreement); Q&A 9 (limitations of term for repayment); Q&A 19(b)(2)(i)(repayment after default only by payroll withhold pursuant to "an enforceable agreement under applicable law.") [DOL Reg. [29 C.F.R] 2550.408(b)-1]. With the preemption of state law by 29 U.S.C. §1144 and express limitations of the prohibited transaction rules, only federal law can distinguish an "enforceable agreement" – i.e., one that complies with ERISA and its prohibited transaction rules-- from a prohibited and void distribution of plan assets which would creates different issues on relief and recovery.

The federal nexus is rendered tighter by the fact that fiduciaries who failed to observe and enforce these limits would be implicated in a prohibited transaction. They then would be subject to suit by a participant, the government or another fiduciary to "enjoin" such practices under 29 U.S.C. §1132 - with the Court focusing on the same terms of a loan and collection practice as in this case. The federal regulatory scheme for such loans is the critical issue in both cases and is "federal" in nature – regardless of the identity of the plaintiff or the nature of the relief that is sought.

Judge Sloviter used a different formulation of federal question jurisdiction, *Northeast Department ILGWU,* 764 F.2d at 165-166:

> Judge Becker's broad view that merely because federal common law supplies the rule of decision, there is "arising under" jurisdiction under 28 U.S.C. § 1331 was before the Supreme Court and expressly rejected in *Franchise Tax Board v. Construction Laborers Vacation Trust,* 463 U.S. 1, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983)...
>
> Nonetheless, the Court did not preclude use of "arising under" jurisdiction for certain types of ERISA actions. …
>
> The analysis of § 1331 "arising under" jurisdiction that I believe fits this case is governed by the Supreme Court's holding in *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 103 S.Ct. 2890, 2899 n. 14, 77 L.Ed.2d 490 (1983). There the Court held that § 1331 jurisdiction extended to suits brought by employers with ERISA covered plans seeking to invalidate the New York Disability Benefits Law on the grounds of preemption. [footnote omitted] Although employers are not included among the plaintiffs enumerated in ERISA in 29 U.S.C. § 1132, the Court held that 28 U.S.C. § 1331 supplied jurisdiction since it was a suit in which "companies subject to ERISA regulation" seek "injunctive relief from state regulation, on the ground that such regulation is pre-empted by a federal statute." *Id.* 103 S.Ct. at 2899 n. 14.
>
> Since *Shaw* and *Franchise Tax Board* were decided the same day, they must be read together. In *Franchise Tax Board,* the Court held that there was no federal jurisdiction over a state tax board's suit to declare that its right to levy on a welfare trust fund was not preempted by ERISA. …
>
> …However, the Court did not retract from and indeed reiterated the well-established principle that
>
>> Congress has given the lower federal courts jurisdiction to hear ... those cases in which a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law. *Id.*
>
> The Court made a distinction, for jurisdictional purposes, between the state tax authority and those "[p]arties subject to conflicting state and federal regulatory schemes [who] have a clear interest in sorting out the scope of each government's authority, especially where they face a threat of liability if the application of federal law is not quickly made clear." *Id.* at 2852 n. 23. The Court described its effort as one of "common-sense accommodation of judgment to kaleidoscopic situations ... a selective process which picks the substantial causes out of the web and lays the other ones aside." *Id.* at 2852 (quoting *Gully v. First National Bank,*

299 U.S. 109, 117-18, 57 S.Ct. 96, 99-100, 81 L.Ed. 70 (1936)).

The Court's holdings in *Shaw* and *Franchise Tax Board* may be explained on the basis of the significant difference between the interests at stake in the underlying suits. In *Shaw,* the plaintiffs were subject to regulation under ERISA and responsible for the payment of benefits to beneficiaries. Thus, they were held able to maintain a federal action to clarify their responsibilities by challenging state action that impinged on their enforcement or payment responsibilities. In contrast, in *Franchise Tax Board* the claims of the state tax board were tangential to enforcement or payment responsibilities.

The loan context also satisfies Judge Sloviter's test as a necessary, if assumed, part of Plaintiffs' case is the existence of a "enforceable agreement" that falls within the prohibited transaction exemption for participant loans. The repayment of these obligations directly affects the plan's funding and the "payment of benefits to [other] beneficiaries" that are at the core of ERISA. *Unum Life Insurance Company of America v. Long,* 227 F.Supp.2d 609 (N.D. Tex. 2002) supports this view of continuing §1331 jurisdiction after *Knudson*. *Unum* dealt with recoupment of an overpayment of disability benefits. After rejecting ERISA jurisdiction in light of *Knudson*, the court nonetheless concluded:

> Federal district courts also have jurisdiction "of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. *Unum* argues that jurisdiction is proper under this statute because federal common law allows a claim for unjust enrichment or restitution to recover overpayments made to an ERISA plan beneficiary.
>
>> The Fifth Circuit has recognized that a federal common law right of restitution is available under ERISA to recover the overpayment of benefits. … *Jamail, Inc. v. Carpenters District Council of Houston Pension & Welfare Trusts,* 954 F.2d 299 [,303] (5th Cir.1992). …
>>
>> The creation of such a remedy furthers the goals of ERISA by promoting the prompt payment of claims. *See id.* at 305, *citing Provident Life & Accident Insurance Co. v. Waller,* 906 F.2d 985, 990 (4th Cir.), *cert. denied,* 498 U.S. 982, 111 S.Ct. 512, 112 L.Ed.2d 524 (1990). If an insurer or fiduciary cannot sue for the restitution of overpayments, "they are likely to delay payment to the [beneficiary] until they can calculate accurately the precise amount they owe." *Id.* at 304. It also could lead to the elimination of the policy provision that allows an insured to receive the

> full amount of disability benefits, with no reduction for estimated social security benefits, until social security benefits have been awarded. "Allowing an insured to forego a reduction in payments if he promises to repay any overpayment should be encouraged because it provides him with his full entitlement earlier than he would otherwise receive it." *UNUM Life Insurance Co. of America v. White,* No. MO-01-CA-128, op. at 3 n.3 (W.D.Tex. Apr. 17, 2002). Other courts have cited similar policy considerations in recognizing a common law claim for restitution or unjust enrichment to recover overpayments to an ERISA plan beneficiary. *See, e.g. Heller v. Fortis Benefits Insurance Co.,* 142 F.3d 487, 495 (D.C.Cir.), *cert. denied,* 525 U.S. 930, 119 S.Ct. 337, 142 L.Ed.2d 278 (1998) (holding that unjust enrichment claim was available under ERISA to recover disability benefits wrongfully paid to beneficiary); *Waller,* 906 F.2d at 990 (recognizing federal common law right to recover funds advanced to plan participant); *Plucinski v. I.A.M. National Pension Fund,* 875 F.2d 1052, 1058 (3d Cir.1989) ("[I]f we did not recognize this cause of action it could lead to severely inequitable results that we do not believe were intended by Congress.").
>
> Nothing in [*Knudson*] which involved only statutory claims brought under section 502(a)(3) of ERISA, precludes an insurer from enforcing its rights through traditional common law remedies. Because *Unum* has alleged a claim for unjust enrichment under federal common law, jurisdiction is proper under 28 U.S.C. § 1331. *See Provident Life and Accident Insurance Co. v. Cohen,* 193 F.Supp.2d 845, 851-52 n. 4 (D.Md.2002).

*Unum*, 227 F.Supp.2d at 613-614. See also, *Chaness & Simon Profit-Sharing Plan v. Simon*, 241 F.Supp.2d 774 (E.D. Mich. 2003) (same conclusion after *Knudson*). The *Unum* court's analysis eliminates the need for tracing to support a recovery of plan assets in federal court and reinforces the continuing vitality of *Plucinski* to support §1331 jurisdiction for that purpose in this circuit.

### III.   COMPLETE PREEMPTION

The unique feature of this investment is that the "loan" is specifically prohibited by ERISA, as it is made to a "party-in-interest" under 29 U.S.C. §1002(14) rather than a stranger to the plan, absent compliance with plan terms and related implied tax terms under 29 U.S.C. §1108(c). The prohibited transaction restriction makes the loan more than simply contractual.

The jurisdiction of state courts in ERISA matters is limited to the pure "contractual" enforcement of plan terms, 29 U.S.C. §11329(e). They do not have the authority to address prohibited transaction limitations or exemptions, *id,* which are either a necessary element of the Fund's allegation of an "enforceable agreement" or potential defenses of a recipient of plan assets.  In this context, the "complete preemption" rule of *Pilot Life Insurance Company* must apply to allow federal courts to address the entire transaction – rather than separating contractual issues for state court after a predicate determination of enforceability in federal court.

## CONCLUSION

The Court has jurisdiction over the subject matter of this action.

          Respectfully submitted,

          JENNINGS SIGMOND, P.C.


By:     s/RICHARD J. DeFORTUNA
       SANFORD G. ROSENTHAL (ID NO. 38991)
       RICHARD J. DeFORTUNA (ID NO. 86260)

                                             The Penn Mutual Towers, 16th Floor
                                             510 Walnut Street
                                             Philadelphia, PA  19106
                                             (215) 351-0611
                                             (215) 351-0674

Date: <u>May 21, 2003</u>                      Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

     I, Richard J. DeFortuna, Esquire, statue under penalty of perjury that I caused a copy of the foregoing Memorandum of Law in Support of Plaintiffs' Motion for Default Judgment to be served via first class mail, postage prepaid on the date and to the address below:

Derrick R. Banks<br>
4312 Terrace Street<br>
Philadelphia, PA 19128

Anna E. Banks

4312 Terrace Street  
Philadelphia, PA 19128

<u>s/Richard J. DeFortuna</u>  
RICHARD J. DEFORTUNA, ESQUIRE

Date: <u>May 21, 2003</u>

THIS DOCUMENT HAS BEEN ELECTRONICALLY FILED AND IS AVAILABLE FOR

VIEWEING AND DOWNLOADING FROM THE ECF SYSTEM

Case 2:02-cv-04545-LP   Document 16   Filed 05/21/2003   Page 13 of 13

115820-1                                              13